

**ORDERED in the Southern District of Florida on March 18, 2013.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

In re:

                                                  Case No. 12-39130-PGH
                                                  Chapter 11

PJB MANAGEMENT, INC.,

                           Debtor.      /

**ORDER APPROVING SALE OF REAL PROPERTY AND IMPROVEMENTS THEREON LOCATED AT 1890 ABBEY ROAD, WEST PALM BEACH, FL 33403 FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTIONS 363(b), (f) AND (m) OF THE BANKRUPTCY CODE AND AUTHORIZING ASSUMPTION AND ASSIGNMENT OF UNEXPIRED NON-RESIDENTIAL REAL PROPERTY LEASES PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE**

        THIS MATTER came before the Court on March 5, 2013 at 10:30 a.m. (the "Sale Hearing") upon the motion filed by PJB Management, Inc. (the "Debtor") on January 23, 2013 [D.E. 41] (the "Sale Motion")[1] for entry of an order: (A) Approving Competitive Bidding and Sale Procedures; (B) Approving Form and Manner of Notice; (C) Scheduling Dates to Conduct

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meaning ascribed to them in the Sale Motion.

Auctions and Hearing to Consider Final Approval of Sales, Including Treatment of Unexpired Non-Residential Real Property Leases; and (D) Authorizing the Sale of Commercial Real Property Located at: (i) 1890 Abbey Road, West Palm Beach, FL 33401 ("Abbey"); and, (ii) 4895 Windward Passage Drive, Boynton Beach, FL 33436 ("Gables") Free and Clear of all Liens, Claims, Encumbrances, and Interests pursuant to sections 105, 363 and 365 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004(a), 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 6004-1, and the Objection filed by Iberiabank [D.E. 49].

On February 12, 2013, this Court entered an order approving the Sale Motion (the "Bidding Procedures Order") [D.E. 50] and approving the form of notice of the proposed sale of Abbey (the "Notice"), establishing March 5, 2013 as the auction date and the date of a hearing on the Debtor's request to sell Abbey, assume and assign leases and for related relief.  The Notice, dated February 12, 2013, was served upon all creditors and parties in interest, as evidenced by a certificate of service filed with this court [D.E. 51].  Accordingly, it is

**FOUND** and **DETERMINED** that:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rules 7052 and 9014.

B.      This Court has jurisdiction over all issues considered at the Sale Hearing and the Debtor's request to sell Abbey to Eric Ende, the purchaser of Abbey (the "Buyer") pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

C.      Proper, timely, adequate and sufficient notice of the Sale Hearing has been given in accordance with: (i) Bankruptcy Rules 2002, 4001, and 6004; and (ii) the Bidding Procedures Order.

D.      The Debtor has complied in all respects with the Bidding Procedures Order.

E.      Michael Falk & Co. has been actively marketing Abbey since June of 2012, and has continued to seek higher and better offers for Abbey during the pendency of this bankruptcy case.  Additionally, William Strauss of CBRE, Inc. actively marketed Abbey from June of 2011 to May of 2012.  No party other than the Buyer has submitted a proposed competing bid in connection with the Bidding Procedures Order.

F.      Sound business reasons exist for the Debtor to sell Abbey to the Buyer, as contemplated under the terms of the Abbey Contract.

G.      The acceptance of the offer contained in the Abbey Contract and the consummation of the transaction contemplated therein is, in the sound business judgment of the Debtor, in the best interests of the Debtor's estate and its creditors.

H.      The purchase price and other consideration to be paid by the Buyer under the terms of the Abbey Contract: (i) are fair and reasonable under the circumstances of the case; and (ii) represent the highest and best offer received by the Debtor for Abbey.

I.      The terms of this purchase and sale were negotiated at arm's length between the Debtor and the Buyer.  The Debtor does not have any prior relationship with the Buyer. Accordingly, the sale and other transactions undertaken by the Debtor and the Buyer under the Abbey Contract were conducted without collusion and in good faith within the meaning of section 363(m) of the Bankruptcy Code, and the Buyer is entitled to the protections afforded

good-faith purchasers for value under the provisions of sections 363(m) and 363(n) of the Bankruptcy Code.

J.      Time is of the essence in consummating the sale to the Buyer, and there are good and sound business reasons that provide cause for waiving the stay otherwise imposed by Bankruptcy Rules 6004(h) and 6006(d), including but not limited to the terms of the Abbey Contract, which require a swift closing of the transactions contemplated under the Abbey Contract.

K.      The Debtor has full corporate power and authority to execute and consummate the Abbey Contract and the transactions contemplated therein on behalf of the Debtor, and no additional consents or approvals, other than those expressly provided for in the Abbey Contract, are required to consummate the transactions contemplated by the Abbey Contract.

L.      The Buyer would not have entered into the Abbey Contract, thus adversely affecting the Debtor, its estate and creditors, if the sale of Abbey to the Buyer was not free and clear of all liens, claims and encumbrances, or if the Buyer would, or in the future could, be liable for any of such liens, claims or encumbrances.  A sale of Abbey other than one free and clear of all liens, claims and encumbrances would adversely impact the Debtor's estate, and would yield substantially less value for the Debtor's estate.

M.      A sale on the terms and conditions of the Abbey Contract, including without limitation, entry of an order providing a sale free and clear of all liens, claims and encumbrances and providing that the Buyer is not a successor of the Debtor, is consistent with the Bankruptcy Code and promotes the policies of the Bankruptcy Code to maximize value to the Debtor's estate.  Absent such finding, the Buyer would be unwilling to pay the price for Abbey as provided for in the Abbey Contract.

N.      The Buyer has provided adequate assurance that it can and will close on the purchase of Abbey pursuant to the terms of the Abbey Contract.  As of December 31, 2012, the Buyer has over $1,000,000.00 in cash available to consummate this transaction.  The Court has accepted the proffer of the Debtor that the Buyer has sufficient cash available upon entry of this order to consummate this transaction.

O.      The Court's approval of the Abbey Contract and the transactions contemplated therein is in the best interests of the Debtor, its estate and its creditors.  Accordingly, it is

**ORDERED** as follows:

1.      The Sale Motion is **GRANTED**, as set forth below.

2.      The Abbey Contract is approved in all respects.  Pursuant to 11 U.S.C. §§ 363(b), (f) and (m), the Debtor is authorized and directed to consummate the sale approved by this Order, including transferring and conveying the real property and improvements thereon legally described as

**Tract "F" of Abbey Park Plat No. 3, according to the map or plat thereof as recorded in Plat Book 46, Page 180, Public Records of Palm Beach County, Florida**

to the Buyer pursuant to and in accordance with the terms and conditions of the Abbey Contract. The purchase price is $965,000.

3.      Pursuant to 11 U.S.C. §§ 363(b), (f), (m) and (n) and 365(a) and (f), the Debtor is authorized, directed and empowered to consummate and implement fully the Abbey Contract, together with all additional instruments and documents that may be necessary to implement the Abbey Contract.  The Debtor is authorized and directed to take all actions necessary for the purpose of assigning, transferring, granting, and conveying Abbey to the Buyer, free and clear of all liens, claims and encumbrances, and assuming and assigning all unexpired non-residential real property leases for units in Abbey for which the Debtor was the landlord/lessor.

4.       The Palm Beach County Tax Collector will receive payment in cash at closing of the total gross taxes owed on Abbey, including $29,281.09 for property taxes related to 2012 taxes on Abbey (PCN 00-42-44-11-17-006-0000) and statutory interest at the rate of 18% per annum, if applicable, less any payments made prior to the date of entry of the Sale Order.  Any amounts owed to the Palm Beach County Tax Collector on account of accrued but unpaid 2013 real estate taxes will be prorated, and any prorated amount owed by the Debtor will be paid to the Palm Beach County Tax Collector in cash at Closing.

5.       The Debtor is authorized and directed to pay the brokerage commission owed to Michael Falk & Company, LLC in cash at Closing as set forth in this Court's *Order Granting Application for Employment of Real Estate Sales Professionals on a Final Basis Nunc Pro Tunc to Petition Date* [D.E. 36] and the listing agreement approved therein.

6.       The Buyer will receive a credit on the purchase price for Abbey in an amount equal to $50,701.10**,** currently held by Iberiabank, which funds were received in connection with an insurance claim made by the Debtor for fire damage that occurred in or about January of 2013 (the "Insurance Proceeds").  Iberiabank shall apply the amount of the Insurance Proceeds, which shall be equal to the amount of the Buyer's credit, to reduce its claims against the Debtor with respect to Abbey.

7.       The Buyer will receive an additional credit on the purchase price for Abbey in an amount equal to $9,758.65, which funds represent a portion of the replacement cost provisions of the Debtor's insurance policy, which are potentially recoverable upon completion of the fire damage repairs. In the event such funds are paid in the future they will be paid to the Debtor for the benefit of its estate.

8.      Upon Closing, the Debtor is authorized and directed to pay to Iberiabank the net proceeds of the sale of Abbey.  Iberiabank shall apply the amount of the net proceeds of the Abbey sale to reduce its claims against the Debtor with respect to Abbey.

9.      Closing shall occur no later than three business days after this Order becomes final and non-appealable, which period shall commence fourteen days after entry of this Order.

10.      Any agreements, documents, or other instruments executed in connection with the Abbey Contract may be modified, amended, or supplemented by the parties in accordance with the terms of the Abbey Contract without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

11.      Prior to or after the Closing, the Debtor is authorized and directed to execute such documents and take all other actions as may be necessary to release all liens, claims and encumbrances against Abbey.  In the event any party fails to release its liens, claims or encumbrances in Abbey, the Debtor and the Buyer are each authorized to take any action necessary to do so including but not limited to executing and filing any statements, instruments, releases and other documents on such party's behalf.  The Buyer is authorized to file, register or otherwise record a certified copy of this Order.  Once this Order is so filed, registered or otherwise recorded, this Order shall constitute conclusive evidence of the release of all liens, claims and encumbrances against Abbey as of the Closing.

12.      The consideration provided by the Buyer for Abbey under the Abbey Contract constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. The Buyer has and will have acted in good faith in purchasing Abbey under the Abbey Contract

as that term is used in section 363(m) of the Bankruptcy Code, and the Buyer is entitled to all of the protections afforded thereunder.  For that reason, any reversal or modification of this Order on appeal will not affect the validity of the sale to the Buyer.  The sale may not be avoided under section 363(n) of the Bankruptcy Code.  Notwithstanding Fed. R. Bankr. P. 6004(h) and 6006(d), this Order will take effect immediately upon entry.

13.     Any lien, claim or encumbrance against Abbey will attach to the net proceeds of the sale with the same effect, validity, enforceability and priority of such liens, claims and encumbrances, if any, as such liens, claims or encumbrances had against Abbey prior to the sale contemplated in the Abbey Contract, subject to any rights, claims, defenses and objections of the Debtor and all interested parties with respect to such liens, claims and encumbrances.

14.     The Debtor may sell Abbey free and clear of all liens, claims and encumbrances because, with respect to each party asserting a lien, claim or encumbrance, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.  Holders of liens, claims or encumbrances who did not object to the Sale Motion are deemed to have consented to the Sale Motion pursuant to section 363(f)(2) of the Bankruptcy Code.

15.     Except as expressly set forth in the Abbey Contract, the Buyer will have no responsibility for any liability, lien, claim or encumbrance or other obligation of or against the Debtor related to Abbey by virtue of the transfer of Abbey.  The Buyer will not be deemed, as a result of any action taken in connection with the purchase of Abbey: (i) to be a successor in interest to the Debtor; or (ii) to have, de facto or otherwise, merged with or into the Debtor.  The Buyer does not acquire or assume any liability, lien, claim, encumbrance, warranty, or other obligation of the Debtor, except as expressly set forth in the Abbey Contract.

16.     Upon Closing, this Order shall constitute a full and complete general assignment, conveyance and transfer of Abbey and/or a deed or a bill of sale transferring good and marketable title in Abbey to the Buyer on the Closing Date free and clear of all liens, claims and encumbrances.  If  necessary, this Order shall be accepted for recordation on or after the Closing Date as conclusive evidence of the free and clear, unencumbered transfer of title to Abbey to the Buyer.

17.     This Order is effective as a determination that any and all liens, claims and encumbrances, if any, will be, and are, without further action by any person or entity, unconditionally released, discharged and terminated with respect to Abbey upon closing of the sale of the property.

18.     This Court shall retain exclusive jurisdiction to: (i) enforce and implement the Abbey Contract and any other agreements and instruments executed in connection with the Abbey Contract; (ii) compel delivery of possession of Abbey to the Buyer; (iii) resolve any disputes, controversies or claims arising out of or relating to the Abbey Contract; and (iv) interpret, implement and enforce the provisions of this Order.

19.     The terms and provisions of the Abbey Contract and this Order will be binding in all respects upon, and will inure to the benefit of, the Debtor, its estate, the Buyer and their respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding.

20.     To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Abbey Contract and this Order, the provisions contained in this Order will control.  Nothing contained in any subsequent Chapter

11 plan confirmed in this bankruptcy case or in any order of the Court confirming such Chapter

11 plan shall conflict with or modify the rights of the Buyer pursuant to the provisions of the

Abbey Contract or this Order.

###

Submitted by:
Eric A. Rosen, Esq.
Rosen & Winig, P.A.
2925 PGA Blvd., Suite 100
Palm Beach Gardens, FL 33410
Telephone: (561)799-6040
erosen@rosenwinig.com

**Attorney Rosen is directed to serve a conformed copy of this Order on all parties entitled to service and to file a Certificate of Service with the Court.**