

**ORDERED in the Southern District of Florida on April 19, 2013.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

In re:

                                              Case No. 12-39130-PGH
                                              Chapter 11

PJB MANAGEMENT, INC.,

        Debtor.    /

**AGREED AMENDED ORDER APPROVING SALE OF REAL PROPERTY AND IMPROVEMENTS THEREON LOCATED AT 4895 WINDWARD PASSAGE DRIVE, BOYNTON BEACH, FL 33436 FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTIONS 363(b), (f) AND (m) OF THE BANKRUPTCY CODE AND AUTHORIZING ASSUMPTION AND ASSIGNMENT OF UNEXPIRED NON-RESIDENTIAL REAL PROPERTY LEASES PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE
(Amended to clarify the extent of the assumption of the
Verizon Wireless Personal Communication Lease)**

THIS MATTER came before the Court on March 5, 2013 at 10:30 a.m. (the "Sale Hearing") for the Auction and hearing to approve sale free and clear of liens, claims, encumbrances and interests upon the motion filed by PJB Management, Inc. (the "Debtor") on

January 23, 2013 [D.E. 41] (the "Sale Motion")[1] for entry of an Order: (A) Approving Competitive Bidding and Sale Procedures; (B) Approving Form and Manner of Notice; (C) Scheduling Dates to Conduct Auctions and Hearing to Consider Final Approval of Sales, Including Treatment of Unexpired Non-Residential Real Property Leases; and (D) Authorizing the Sale of Commercial Real Property Located at: (i) 1890 Abbey Road, West Palm Beach, FL 33401 ("Abbey"); and, (ii) 4895 Windward Passage Drive, Boynton Beach, FL 33436 ("Gables") Free and Clear of all Liens, Claims, Encumbrances, and Interests pursuant to sections 105, 363 and 365 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004(a), 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 6004-1, the Objection filed by Iberiabank [D.E. 49], and the Court order entered February 12, 2013 approving the Sale Motion (the "Bidding Procedures Order") [D.E. 50]. The Order approved the form of notice of the proposed sale of Gables (the "Notice"), established March 5, 2013 as the auction date and the date of a hearing on the Debtor's request to sell the Gables property and for related relief. The Notice, dated February 12, 2013, was served upon all creditors and parties in interest, as evidenced by a certificate of service filed with this court [D.E. 51][2]. Accordingly, it is

    **FOUND** and **DETERMINED** that:

    A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rules 7052 and 9014.

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meaning ascribed to them in the Sale Motion.

[2] On March 19, 2013 the Debtor filed its Motion to Reject Right of First Refusal between PJB Management, Inc. and Verizon Wireless Personal Communications (D.E. 58) which was served upon all interested parties and creditors and which dealt with the rejection of Rights of First Refusal to Verizon.

B. This Court has jurisdiction over all issues considered at the Sale Hearing and the Debtor's request to sell Gables to Dan Acquisitions, LLC, and/or assigns (the "Buyer") pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

C. Proper, timely, adequate and sufficient notice of the Sale Hearing has been given in accordance with: (i) Bankruptcy Rules 2002, 4001, and 6004; and (ii) the Bidding Procedures Order.

D. The Debtor has complied in all respects with the Bidding Procedures Order.

E. Michael Falk & Co. has been actively marketing Gables since June of 2012, and has continued to seek higher and better offers for Gables during the pendency of this bankruptcy case. The Buyer submitted a bid of $2,455,000 at the auction, which bid is the highest and best offer for Gables as determined by the Debtor and the Bankruptcy Court. James H. Batmasian (the "Back-up Bidder") submitted his final bid of $2,445,000 at the auction, which bid shall be deemed the back-up bid.

F. Sound business reasons exist for the Debtor to sell Gables to the Buyer, as contemplated under the terms of the Gables Contract, the Bid Procedures Order and the Notice of Sale.

G. The acceptance of the Buyer's offer contained in the Gables Contract and the consummation of the transaction contemplated therein free and clear of liens, claims, encumbrances and interests is in the sound business judgment of the Debtor and is in the best interests of the Debtor's estate and its creditors.

H. The purchase price and other consideration to be paid by the Buyer under the terms of the Gables Contract: (i) are fair and reasonable under the circumstances of the case; (ii)

3

represent the highest and best offer received by the Debtor for Gables; and (iii) will provide a greater recovery to the estate than would be provided by a sale to the Back-up Bidder.

I. The terms of this purchase and sale were negotiated at arm's length by and between the Debtor and the Buyer. The Debtor does not have any prior relationship with the Buyer. Accordingly, the sale and other transactions undertaken by the Debtor and the Buyer under the Gables Contract were conducted without collusion and in good faith within the meaning of section 363(m) of the Bankruptcy Code, and the Buyer is entitled to the protections afforded good-faith purchasers for value under the provisions of section 363(m) of the Bankruptcy Code.

J. Time is of the essence in consummating the sale to the Buyer, and there are good and sound business reasons that provide cause for waiving the stay otherwise imposed by Bankruptcy Rules 6004(h) and 6006(d), including but not limited to the terms of the Gables Contract, which requires a swift closing of the transactions contemplated under the Gables Contract.

K. The Debtor has full corporate power and authority to execute and consummate the Gables Contract and the transactions contemplated therein on behalf of the Debtor, and no additional consents or approvals, other than those expressly provided for in the Gables Contract, are required to consummate the transactions contemplated by the Gables Contract.

L. The Buyer would not have entered into the Gables Contract, thus adversely affecting the Debtor, its estate and creditors, if the sale of Gables to the Buyer was not free and clear of all liens, claims, encumbrances and interests, or if the Buyer would, or in the future could, be liable for any of such liens, claims, encumbrances or interests. A sale of Gables other

than one free and clear of all liens, claims, encumbrances or interests would adversely impact the Debtor's estate, and would yield substantially less value for the Debtor's estate.

M.    A sale on the terms and conditions of the Gables Contract, including without limitation, entry of an order providing a sale free and clear of all liens, claims, encumbrances and interests and providing that the Buyer is not a successor in interest of the Debtor, is consistent with the Bankruptcy Code and promotes the policies of the Bankruptcy Code to maximize value to the Debtor's estate. Absent such finding, the Buyer would be unwilling to pay the price for Gables as provided for in the Gables Contract.

N.    The Buyer has provided adequate assurance that it can and will close on the purchase of Gables pursuant to the terms of the Gables Contract. As of February 6, 2013, the Buyer appeared to have sufficient cash available to consummate this transaction.

O.    The Court's approval of the Gables Contract and the transactions contemplated therein is in the best interests of the Debtor, its estate and its creditors. Accordingly, it is

**ORDERED** as follows:

1.    The Sale Motion is **GRANTED**, as set forth below.

2.    The Gables Contract is approved in all respects. Pursuant to 11 U.S.C. §§ 363(b), (f) and (m), the Debtor is authorized and directed to consummate the sale approved by this Order, including transferring and conveying the real property and improvements thereon legally described as

> **Tract A-1 of Windward Palm Beach Plat Three (a PUD), according to the plat thereof, as recorded in Plat Book 62, at Page 158, Public Records of Palm Beach County, Florida**

to the Buyer pursuant to and in accordance with the terms and conditions of the Gables Contract. The purchase price is $2,455,000.

3. Pursuant to 11 U.S.C. §§ 363(b), (f), (m) and 365(a) and (f), the Debtor is authorized, directed and empowered to consummate and implement fully the Gables Contract, together with all additional instruments and documents that may be necessary to implement the Gables Contract.

4. The Debtor is authorized and directed to take all actions necessary for the purpose of assuming, assigning, transferring, granting, and conveying Gables to the Buyer, free and clear of all liens, claims, encumbrances, and interests, and assuming and assigning the unexpired non-residential real property leases at Gables for which the Debtor is the landlord/lessor, and the other agreements listed on Exhibit "A" hereto.

5. The Buyer has the right to assign its right, title and interest in the Gables Contract or to Gables to another party, that it may or may not own or control.

6. The Palm Beach County Tax Collector will receive payment in cash at Closing of the total gross taxes owed on Gables, including $54,033.97 for property taxes related to 2012 taxes on Gables (PCN 00-42-45-13-10-001-0010) or such sum as the Tax Collector requires plus any and all accrued statutory interest at the rate of 18% per annum, if applicable, less any payments made prior to the date of entry of the Sale Order, and Debtor shall provide Buyer with proof of same. Any amounts owed to the Palm Beach County Tax Collector on account of accrued but unpaid 2013 real estate taxes will be prorated, and any prorated amount owed by the Debtor will be paid to the Palm Beach County Tax Collector in cash at Closing or credited to the Buyer on the Closing Statement, and Buyer shall be responsible to pay the 2013 real estate taxes when they become due.

7. All outstanding tax lien certificates for tax years 2010 and 2011 will be paid in full in cash at Closing by the Debtor, and the Debtor shall provide Buyer with proof of same.

8. The Debtor will reserve the sum of $30,000.00[3] from the proceeds of the sale and will transfer such funds to Rosen & Winig, P.A.'s Trust Account at closing to satisfy any amounts which may be due and owing to the Windward Master Association, Inc. for unpaid assessments.

9. The Debtor is authorized and directed to pay the brokerage commissions owed to Michael Falk & Company, LLC and Solutions RE, LLC in cash at Closing as set forth in this Court's *Order Granting Application for Employment of Real Estate Sales Professionals on a Final Basis Nunc Pro Tunc to Petition Date* [D.E. 36] and the listing agreement approved therein.

10. The Debtor shall pay all reasonable, usual and customary closing costs and expenses including costs related to obtaining and providing a title insurance policy to Buyer in connection with this transaction at Closing. Neal Kalis, Esq. at Kalis and Kleiman, P.A. will act as closing and title agent for this transaction.

11. Upon Closing, the Debtor is authorized and directed to pay to Iberiabank the net proceeds of the sale of Gables. Iberiabank shall apply the amount of the net proceeds of the Gables sale to reduce its claims against the Debtor.

12. Provided that the Verizon Right of First Refusal has not been elected, then absent a showing of good cause Closing shall occur no later than the earlier of (i) May 15, 2013 or (ii) three business days after this Order becomes final and non-appealable (which Order and the Order Granting Motion to Reject Right of First Refusal between PJB Management, Inc. and Verizon Wireless Personal Communications (D.E. 58) have not been subject to a Motion to Rehear, Reconsider, Alter, Amend or Appeal). The Debtor shall return the Back-up Bidder's

---

[3] The Windward Master Association filed a Proof of Claim (No. 6) in the amount of $27,283.04, which amount this Court will determine upon appropriate motion.

good faith deposit within twenty days from the date of entry of this Order or within five business days from the date that the Buyer closes on the transaction, provided the Buyer closes on the sale of Gables pursuant to the terms of this Order.

13. In the event the Buyer does not close within the time frame specified herein, the Back-up Bidder shall be deemed to be the bidder with the highest and best offer for the purchase of Gables and the Buyer's good faith deposit shall be forfeited to the Debtor's estate without further notice or hearing. The Back-Up Bidder shall then be obligated to close the Sale on the terms of the Back-Up Bid and the corresponding purchase and sale contract no later than five business days from the date that the Buyer is deemed to be unable or unwilling to close the transaction. In the event the Back-up Bidder is unable or unwilling to close within the time frame specified herein, the Back-up Bidder's good faith deposit shall be forfeited to the Debtor's estate without further notice or hearing.

14. Any agreements, documents, or other instruments executed in connection with the Gables Contract may be modified, amended, or supplemented by the parties in accordance with the terms of the Gables Contract without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate or modify the terms of this Order.

15. Prior to or after the Closing, the Debtor is authorized and directed to execute such documents and take all other actions as may be necessary to release all liens, claims and encumbrances against Gables. In the event any party fails to release its liens, claims or encumbrances in Gables, the Debtor and the Buyer are each authorized to take any action necessary to do so including but not limited to executing and filing any statements, instruments, releases and other documents on such party's behalf or bringing the matter before the Court to

compel the release/discharge. The Buyer is authorized to file, register or otherwise record a certified copy of this Order. Once this Order is so filed, registered or otherwise recorded, this Order shall constitute conclusive evidence of the release of all liens, claims, encumbrances and interests against Gables as of the date of the Closing.

16. The consideration provided by the Buyer for Gables under the Gables Contract constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. The Buyer has and will have acted in good faith in purchasing Gables under the Gables Contract as that term is used in section 363(m) of the Bankruptcy Code, and the Buyer is entitled to all of the protections afforded thereunder. For that reason, any reversal or modification of this Order on appeal will not affect the validity of the sale to the Buyer. The sale may not be avoided under section 363(n) of the Bankruptcy Code. Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order will take effect immediately upon entry.

17. Any lien, claim, encumbrance or interest against Gables will attach to the net proceeds of the sale with the same effect, validity, enforceability and priority of such liens, claims, encumbrances, and interests, if any, as such liens, claims or encumbrances or interests had against Gables prior to the sale contemplated in the Gables Contract, subject to any rights, claims, defenses and objections of the Debtor and all interested parties with respect to such liens, claims, encumbrances and interests.

18. The Debtor may sell Gables free and clear of all liens, claims and encumbrances because, with respect to each party asserting a lien, claim, encumbrance or interest, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Holders of liens, claims, encumbrances or interests who did not object to the Sale Motion are

9

deemed to have consented to the Sale Motion pursuant to section 363(f)(2) of the Bankruptcy Code.

19.  Except as expressly set forth in the Gables Contract, to the extent not conflicting with this Order, the Buyer will have no responsibility for any liability, lien, claim, encumbrance or interest or other obligation of or against the Debtor related to Gables by virtue of the transfer of Gables.  The Buyer will not be deemed, as a result of any action taken in connection with the purchase of Gables: (i) to be a successor in interest to the Debtor; or (ii) to have, de facto or otherwise, merged with or into the Debtor.  The Buyer does not acquire or assume any liability, lien, claim, encumbrance, warranty, or other obligation of the Debtor, except as expressly set forth in the Gables Contract.

20.  The receipt of the assignment by the Buyer of the noted unexpired non-residential real property leases and agreements on Exhibit "A" is not an assumption of the obligations relating to any and all security deposits and/or pre-paid rent by the tenants or other defaults that are an obligation of the Debtor under such leases or agreements.  Any party that believes it has such a claim must file a proof of claim with the Bankruptcy Court in the Debtor's Chapter 11 case setting forth the basis for such claim, the amount owed, and documents supporting such claim.  A list of the unexpired non-residential real property leases and other agreements which are being assumed by the Debtor and assigned to the Buyer is attached hereto as Exhibit "A".  Any unexpired lease or executory contract that pertains to the Property and that is not listed on Exhibit "A" is deemed to be rejected by the Debtor and the Debtor shall take any action that may reasonably be necessary with relation thereto.

21.  Upon Closing, this Order constitutes a full and complete general assignment, conveyance and transfer of Gables and/or a deed and/or a bill of sale transferring good and

marketable title in Gables and its fixtures to the Buyer on the Closing Date free and clear of all liens, claims, encumbrances and interests. If necessary, this Order shall be accepted for recordation on or after the Closing Date as conclusive evidence of the free and clear, unencumbered transfer of title to Gables to the Buyer.

22. This Order is effective as a determination that any and all liens, claims, encumbrances and interests, if any, will be, and are, without further action by any person or entity, unconditionally released, discharged and terminated with respect to Gables upon closing of the sale of the property pursuant to section 363(f) of the Bankruptcy Code.

23. This Court shall retain exclusive jurisdiction to: (i) enforce and implement the Gables Contract and any other agreements and instruments executed in connection with the Gables Contract; (ii) compel delivery of possession of Gables to the Buyer; (iii) resolve any disputes, controversies or claims arising out of or relating to the Gables Contract; and (iv) interpret, implement and enforce the provisions of this Order.

24. The terms and provisions of the Gables Contract and this Order will be binding in all respects upon, and will inure to the benefit of, the Debtor, its estate, the Buyer and their respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise will be binding.

25. To the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Gables Contract and this Order, the provisions contained in this Order will control. Nothing contained in any subsequent Chapter 11 plan confirmed in this bankruptcy case or in any order of the Court confirming such Chapter

11 plan shall conflict with or modify the rights of the Buyer or the Debtor pursuant to the provisions of the Gables Contract or this Order.

###

Submitted by:
Eric A. Rosen, Esq.
Rosen & Winig, P.A.
2925 PGA Blvd., Suite 100
Palm Beach Gardens, FL 33410
Telephone: (561)799-6040
erosen@rosenwinig.com

**Attorney Rosen is directed to serve a conformed copy of this Order on all parties entitled to service and to file a Certificate of Service with the Court.**

**Exhibit "A"**

- 1013, Inc.
- Boynton Beach Spine & Nerve, Inc.
- Howard Goldberg DDS
- Karen Leighton
- Main Attraction Beauty Salon LLC
- Newman & Weiner Podiatry, P.A.
- NYPD Pizza IV
- Universal Kidney Center of Boynton Beach
- Verizon Wireless Personal Communications Lease (to the extent not rejected or assigned to T3 Unison Site Management, LLC)
- T3 Unison Site Management, LLC Wireless Communication Easement and Assignment Agreement
- T3 Unison Site Management, LLC Net Profits Agreement